UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 07-21398-CIV-SEITZ/O'SULLIVAN

MISLEHIBY CALVO,

　　　　　　Plaintiff,

vs.

WALGREEN CO.,

　　　　　　Defendant.

_____/

## JOINT PRETRIAL STIPULATION

Plaintiff Mislehiby Calvo and Defendant Walgreen Co. ("Walgreens") submit this Joint Pretrial Stipulation pursuant to Rule 16.1.E of the Local Rules of the U.S. District Court for the Southern District of Florida and the Court's Order Setting Pretrial and Trial Dates [D.E. #66].

1. **Short Concise Statement of the Case by Each Party in the Action.**

    A. **Plaintiff's Statement.**

Plaintiff, Ms. Calvo is a 30 year-old female who suffers from Severe Conduction Heart Disease, a genetic heart condition detected as such in 2003 after she lost all consciousness while driving her vehicle. As a consequence of that near-fatal car crash, Ms. Calvo sustained permanent injuries to both arms. After medical care her right arm became relatively functional, the left arm however did not, and it is essentially a non-functioning limb.

At the time of that accident, Ms. Calvo was employed for Defendant Walgreens Corporation as a Management Trainee. She had commenced employ there in 2001 as a Service Clerk, and up to that point, and in fact, until the date of her termination had an excellent work record and history.

When she returned to work after the accident, she worked with an arm sling on both arms and despite this condition managed to do her job with little accommodation. During the time from her

release from the hospital and her return to Walgreens in late 2003, Ms. Calvo would take medical time off to attend to both her medical conditions.  During this time, Ms. Calvo worked at several different store locations.  Her immediate supervisor during most of her employ was Mr. Mario Hernandez, and the management person in charge of managers and assistant managers was always Ms. Maria Lecuyer.

Between the period of July 2003 and to time of termination, Ms. Calvo underwent various medical procedures to restore the use of her arm.  None of the procedures have been able to improve her condition. On January 6th, 2006, after another medical procedure, Ms. Calvo called Mr. Hernandez to inform him she would be ready to return to work.  Ms. Calvo believed she would be returning to work on February 6, 2006 pursuant to the doctor's note.  When Ms. Calvo was summoned by Mr. Hernandez to the store on February 8, 2006, Ms. Calvo believed she was going to be transferred to another store.  However, at this meeting Mr. Hernandez informed Ms. Calvo that pursuant to instructions from Ms. Lecuyer she could not work.  He specifically said: "You cannot work at Walgreens because of your limitations"

Ms. Calvo who was taken by surprise as to why she was not being allowed to work as she had worked before when your condition had been much worse. The next day Ms.Calvo filed for unemployment benefits.

Walgreens challenged these benefits but instead of stating that it was due to medical reasons their response was that separation was due to "lack of work".    It was not until Ms. Calvo filed her ADA discrimination charge that Walgreens began to challenge unemployment benefits on the grounds that she was on some medical leave.

Despite extensive efforts to find employment Ms. Calvo has been unable to date to find employment.  Although her heart condition and pacemaker is not visible her disabled limb is.

2

B.    **Defendant's Statement.**

Defendant denies that it discriminated against Plaintiff on the basis of her alleged disability and denies that it violated the ADA.  The sole reason that Plaintiff no longer has a job with Walgreens is because, after she took a leave of absence to have surgery in the Fall of 2005, she never provided a release from her doctor indicating that she was able to return to her position.

After her July 2003 automobile accident, Plaintiff was on disability leave for several months. Over the following two years, Plaintiff took several more leaves of absence to undergo additional surgical procedures on her arms.  During her absences, she applied for and received short-term disability benefits through MetLife, Walgreens' disability insurance carrier.  Upon returning to work from these leaves of absence, Plaintiff presented certificates from her doctor stating that she was ready to return to "light work," but was unable to engage in any heavy lifting, pushing or pulling.

Beginning on October 30, 2005, Plaintiff took another leave of absence to have another surgical procedure on her left wrist.  As before, Plaintiff applied for and received short-term disability benefits through MetLife.  After those benefits were exhausted in January 2006, Plaintiff never again applied for disability benefits nor did she seek a further leave of absence.

On or about January 16, 2006, Plaintiff telephoned Store Manager Mario Hernandez, and told him that she was ready to return.  Mr. Hernandez advised Plaintiff that she would need to provide a release from her doctor stating that she was able to return to work, and he set up a meeting between Plaintiff and District Manager Maria LeCuyer to discuss Plaintiff's return.  During that meeting, Plaintiff presented a statement from her doctor, which indicated that her doctor had not yet released her to return to work but that they would discuss her return on her next visit.  Accordingly, Ms. LeCuyer advised Plaintiff that she could not yet return, and instructed her to provide a release from her doctor when she was able to return to work.

3

On February 1, 2006, Plaintiff faxed to Walgreens a statement from her orthopedic surgeon dated January 31, 2006, which indicated that Plaintiff's doctor had released Plaintiff to return to work "to any other occupation," and that Plaintiff could not use her upper left extremity; could not climb, twist, bend, stoop, or reach above shoulder level; and could not lift, carry, push or pull anything over five pounds.

As Management Trainee, Plaintiff was responsible for assisting the Store Manager in running the store; her job duties included anything that needed to be done, such as unloading trucks, stocking shelves, mopping the floor, and cleaning the restrooms. When she was promoted to the position of Management Trainee in 2002, Plaintiff was given a copy of the written job description for the position. That document reflects that the duties of the position included unloading trucks and stocking shelves.

Based on the statement of Plaintiff's doctor, Mr. Hernandez advised Plaintiff on February 8, 2006 that she could not return to work at that time. On February 10, 2006, Plaintiff requested a "letter of farewell with the reason"; Walgreens responded that it could not give her such a letter because she was still active in the system. Plaintiff remained employed by Walgreens until June 10, 2006, when her employment was automatically terminated pursuant to Company policy because she had neither returned to work nor obtained a leave of absence after her short-term disability benefits expired in January 2006.

## 2.    <u>Basis of Federal Jurisdiction.</u>

This Court has jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiff has asserted a claim under the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (the "ADA").

Firmwide:93416657.3 046685.1038

3. **The Pleadings Raising the Issues.**

    A.    Plaintiff's Complaint, filed on May 31, 2007 [D.E. #1].

    B.    Defendant's Answer and Affirmative Defenses to Plaintiff's Complaint, filed on July 31, 2007 [D.E. #9].

4. **Undisposed Motions or Other Matters Requiring Court Action.**

The only undisposed motions requiring Court action are the parties' Motions in Limine, to be filed.

5. **Concise Statement of Uncontested Facts That Will Require No Proof at Trial.**

    1.    Defendant Walgreens operates drugstores throughout the United States.

    2.    Plaintiff was employed by Walgreens beginning in October 2001. She initially held the position of Service Clerk (also known as Cashier).

    3.    In July 2002, Plaintiff was promoted to the position of Management Trainee (a/k/a Assistant Manager).

    4.    When Plaintiff was promoted, she was given a copy of the written job description for the position.

    5.    On July 26, 2003, Plaintiff was involved in an automobile accident in which she suffered numerous injuries including broken bones in both arms. She remained hospitalized until August 11, 2003. After she was discharged from the hospital, Plaintiff was on a leave of absence for several months.

    6.    In December 2003, Plaintiff gave Walgreens a Certificate to Return to Work from her doctor, Janet Baker, M.D., which stated that Plaintiff was able to return but was restricted to "light work," with "no heavy lifting/pushing/pulling."

    7.    In July 2004, Plaintiff took a leave of absence to have surgery on her left arm and to recuperate from that surgery.

    8.    In or around August 2004, Plaintiff gave Walgreens a Certificate to Return to Work from Dr. Baker, which stated that Plaintiff could return to work in September 2004, but was unable to do any heavy lifting, pushing or pulling.

    9.    In February 2005, Plaintiff took another leave of absence to have a surgical procedure on her right arm and to recuperate from that surgery. She returned to work in April 2005.

10. Beginning on October 30, 2005, Plaintiff took another leave of absence to have another surgical procedure on her left arm.

11. On or about November 9, 2005, Walgreens sent a letter to Plaintiff acknowledging that she had applied for short-term disability benefits and advising her that she would need to provide a release from her doctor when she was ready to return to work.

12. On each occasion that Plaintiff took a leave of absence from work following her July 2003 accident, she applied for and received short-term disability benefits through Walgreens' disability insurance carrier, MetLife.

13. To support her claims for disability benefits, Plaintiff had her doctors complete MetLife's form Attending Physician Statement indicating that she was physically unable to work.

14. In January 2006, Plaintiff telephoned Store Manager Mario Hernandez and told him that she was ready to return to work.

15. Ms. LeCuyer instructed Plaintiff to obtain a new note from her doctor that released her to return to work.

16. On February 1, 2006, Plaintiff gave Walgreens a copy of a Supplemental Attending Physician Statement dated January 31, 2006, which stated that Plaintiff could not lift, carry, push, or pull anything over five pounds, and that she could not climb, twist, bend, stoop or reach above shoulder level.  The January 31st statement further indicated that Plaintiff's doctor had released her to return "to any other occupation."

17. On February 8, 2006, Mr. Hernandez advised Plaintiff that Walgreens could not allow her to return to work because of her physical limitations.

18. After her short-term disability benefits were exhausted in January 2006, Plaintiff did not submit any further claims for disability benefits or request a leave of absence from Walgreens.

19. Plaintiff continued to receive health insurance benefits through AvMed, Walgreens' group health insurance carrier, until July 14, 2006.

20. Plaintiff filed for unemployment benefits on or about February 9, 2006.

21. Plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) on or about March 8, 2006.

22. The EEOC issued its determination and Notice of Right to Sue on February 27, 2007.

23.     Plaintiff filed her Complaint on May 31, 2007.

**6.      Statement of Issues of Fact That Remain To Be Litigated at Trial.[1]**

**A.     Defendant's Liability.**

(1)     Whether Plaintiff's Complaint was timely filed within 90 days of receipt of the Notice of Right to Sue.

(2)     Whether Plaintiff was substantially limited in one or more major life activities at the time of the alleged discrimination.

(3)     Whether Walgreens incorrectly perceived Plaintiff as substantially limited in one or more major life activities at the time of the alleged discrimination.

(4)     Whether the job duties of Management Trainee involve whatever needs to be done to run the store, and include such things as mopping floors, cleaning restrooms, unloading trucks, and stocking shelves.

(5)     Whether the written job description for Management Trainee reflects that the duties of the position include, among other things, receiving and stocking merchandise.

(6)     Whether an ability to lift, carry, push and pull anything over five pounds was an essential function of Plaintiff's position.

(7)     Whether an ability to climb, twist, bend, stoop or reach above shoulder level was an essential function of Plaintiff's position.

(8)     Whether Plaintiff has identified a reasonable accommodation that would have allowed her to perform the essential functions of the job.

(9)     Whether MetLife sent a letter to Plaintiff in March 2006, advising her that, although she had exhausted her short-term disability benefits, she might be eligible for an unpaid leave of absence from Walgreens, but that she would have to apply for leave because it was not granted automatically.

(10)    Whether MetLife further advised Plaintiff in the March 2006 letter that, if she was not granted an unpaid leave of absence, her employment would terminate as of the benefit end date.

(11)    Whether the EEOC investigated Plaintiff's allegations and found no reasonable cause to believe that Walgreens had discriminated against Plaintiff.

---

[1] To the extent that the Court determines that any of these issues are issues of law, such issues are adopted by reference as issues of law that remain to be determined.

Firmwide:93416657.3 046685.1038

(12)   Whether Plaintiff has proved that Walgreens' proffered explanation for declining to allow her to return to work in February 2006 is false or a pretext for intentional discrimination.

(13)   Whether Plaintiff's claim is barred on the grounds that, even if any decision concerning Plaintiff was based, in part, on discriminatory grounds, Defendant would have reached the same decision absent any alleged discrimination.

(14)   Whether Plaintiff was terminated on February 8, 2006.

(15)   Whether Plaintiff was required to perform all the job duties cited in the Management Trainee description.

(16)   Whether all of the cited job descriptions were essential functions of Plaintiff's job.

(17)   Whether the last medical note provided to Walgreens reflected that Plaintiff's attending physician had released her to return to her previous position.

(18)   Whether prior to 2006 Plaintiff provided to Walgreens any of the MetLife form Attending Physician Statements completed by her doctors.

(19)   Whether Walgreens policy provides that, when an employee does not return to work from a disability leave after a certain period of time, his or her employment is automatically terminated.

(20)   Whether Plaintiff was advised by notice dated September 5, 2006, of her right to continue health insurance coverage under COBRA, based on the "qualifying event" of her termination on June 10, 2006.

(21)   Whether Plaintiff has established a record of disability.[2]

(22)   Whether the comment made by supervisor "you cannot work here because of your limitations" constitutes direct evidence of discrimination.[3]

**B.   Plaintiff's Damages.**

If Plaintiff prevails on her claim, the following issues will arise:

(23)   Whether Plaintiff is entitled to recover back-pay damages, and, if so, the amount of such damages.

---

[2] Defendant disagrees with the inclusion of this issue, which Plaintiff abandoned by failing to raise it in her appeal to the Eleventh Circuit.

[3] Defendant disagrees with the inclusion of this issue, which Plaintiff abandoned by failing to raise it in her appeal to the Eleventh Circuit.

Firmwide:93416657.3 046685.1038

(24)     Whether Plaintiff is entitled to recover compensatory damages for emotional and physical pain and suffering, mental anguish, humiliation, inconvenience and loss of enjoyment of life, and, if so, the amount of such damages.

(25)     Whether Plaintiff's claims for damages are barred, in whole or in part, because of a failure to take reasonable steps to mitigate damages, and, if so, the amount by which her claims for damages are barred.

(26)     Whether Plaintiff is entitled to statutory punitive damages, and, if so, the amount of such damages.

(27)     Whether Defendant has made good-faith efforts to prevent discrimination in its workplace, which would prohibit Plaintiff's claim for punitive damages to the extent that the challenged employment action was contrary to Defendant's efforts to comply with anti-discrimination statutes, and, if so, the amount by which Plaintiff's claim for damages is limited.

(28)     Whether Plaintiff is entitled to recover front-pay damages, and, if so, the amount of such damages.

(29)     Whether Plaintiff is entitled to recover attorney's fees and costs, and, if so, the amount of such damages.

**7.     <u>Concise Statement of Issues of Law on Which the Parties Agree.</u>**

A.     The Court has jurisdiction over the parties, and the Southern District of Florida is the proper venue.

B.     Plaintiff was an employee within the meaning of the ADA.

C.     Defendant is an employer within the meaning of the ADA.

D.     A plaintiff must file suit under the ADA within 90 days of receiving notice of the EEOC's dismissal of the charge.

E.     To establish a claim of disability discrimination, Plaintiff must prove by a preponderance of the evidence that: (1) she has a disability; (2) she is a "qualified individual"; and (3) Walgreens discriminated against her because of her disability. *Hilburn v. Maruta Elecs. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999).

F.     To establish the existence of a disability, Plaintiff must demonstrate that, at the time of the alleged discrimination, she had a physical impairment that substantially limited one or more major life activities.

9

G.      "Disability" has been further defined as: (1) a physical or mental impairment that substantially limits one or more of the major life activities; (2) a record of such impairment; or (3) being regarded as having such an impairment.[4]

H.      A "major life activity" refers to those activities that are of central importance to daily life.

I.      The term "substantially" means considerable or to a large extent, and does not include an impairment that interferes in only a minor way with performing common tasks.

J.      An impairment substantially limits one or more major life activities if that impairment prevents or severely restricts the individual from doing the kinds of activities that are of central importance to most people's daily lives.

K.      Factors to be considered in determining whether an alleged impairment substantially limits a major life activity are: (1) its nature and severity; (2) how long it will last or is expected to last; and (3) its permanent or long-term impact, or expected impact.

L.      To prove that she was qualified, Plaintiff must establish that she was capable of performing all of the essential functions of the job in question with or without some reasonable accommodation.

M.      Plaintiff bears the burden of identifying a reasonable accommodation and of demonstrating that the accommodation she seeks would allow her to perform the essential functions of the job.  *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1255-56 (11th Cir. 2001).

N.      A "reasonable accommodation" is a change that can reasonably be made without undue hardship to the employer in the employer's ordinary work rules, facilities, or terms and conditions of employment.

O.      To the extent that Plaintiff contends that a particular function is not essential to the job, she also bears the burden of proving that the function is not in fact essential.

P.      The ADA does not require an employer to waive or reallocate essential job functions, even if it has done so previously.  *Holbrook v. City of Alpharetta, Ga.*, 112 F.3d 1522, 1528 (11th Cir. 1997).

Q.      To establish a violation under the ADA, Plaintiff must show that Walgreens intentionally discriminated against her because of her alleged disability.

---

[4] Although Defendant agrees that this statement is an accurate recitation of the law, it disagrees with the inclusion of this issue because Plaintiff abandoned her claim that she had a record of having a substantially limiting impairment or was regarded as having such an impairment, by failing to raise those issues in her appeal to the Eleventh Circuit.

Firmwide:93416657.3 046685.1038

R.   If Walgreens articulates a legitimate, non-discriminatory reason for the challenged employment action, then Plaintiff must demonstrate that Walgreens' proffered explanation is false or a pretext for intentional discrimination.

S.   "Front pay, like reinstatement, is a form of equitable relief which is determined by the Court."  *Brochu v. City of Riviera Beach*, 304 F.3d 1144, 1162, n.31 (11th Cir. 2002).

T.   Front pay is warranted only in egregious circumstances.  *Lewis v. Fed. Prison Indus., Inc.*, 953 F.2d 1277, 1281 (11th Cir. 1992); *Ward v. Papa's Pizza*, 907 F. Supp. 1535, 1543 (N.D. Ga. 1995).

U.   A plaintiff must use reasonable efforts to obtain other employment after her employment is terminated.  *Hansard v. Pepsi-Cola Metro. Bottling Co., Inc.*, 865 F.2d 1461, 1468 (5th Cir. 1989).

8.   **Concise Statement of Issues of Law That Remain To Be Determined.**

A.   Whether temporary injuries and impairments of limited duration, including a temporary inability to work while recuperating from surgery, are disabilities under the ADA.

B.   Whether an inability to perform discrete tasks, such as heavy lifting or reaching, render a person substantially limited in a major life activity.  *See Ray v. Glidden Co.*, 85 F.3d 227, 229 (5th Cir. 1996).

C.   Whether, if a person is taking measures to mitigate an impairment, the effect of those measures must be taken into account when judging whether that person is substantially limited in a major life activity.

D.   Whether, to be considered reasonable, and therefore required by the ADA, an accommodation must enable the employee to perform the essential functions of the job.  *See LaChance v. Duffy's Draft House, Inc.*, 146 F.3d 832, 835 (11th Cir. 1998).

E.   Whether, to prove that she would have been qualified for the job if she had received a reasonable accommodation, Plaintiff must prove that: (1) she informed Walgreens of the substantial limitations arising out of her disability; (2) she identified and requested an accommodation; (3) the requested accommodation was reasonable, was available, and would have allowed her to perform the essential functions of the job; and (4) Walgreens unreasonably refused to provide that accommodation.

F.   Whether, in determining whether a particular job duty is an essential function, consideration must be given to the employer's judgment, and if the employer has

11

prepared a written job description, the job description provides evidence of the job's essential functions.  *See Lucas,* 257 F.3d at 1258.

G.     Whether a job duty may be an essential function of the position even if the employee is required to perform the job duty only occasionally.  *See Peters v. City of Mauston*, 311 F.3d 835, 845 (7th Cir. 2002).

H.     Whether the fact that Walgreens may have offered certain accommodations to Plaintiff in the past means that it was legally required to extend the same accommodations to Plaintiff forever.

I.     Whether allowing an employee to work "light duty" on a temporary basis or permitting her co-workers to perform certain tasks for her diminishes the essential nature of those tasks.  *See Phelps v. Optima Health, Inc.*, 251 F.3d 21, 26 (1st Cir. 2001); *Pickering v. City of Atlanta*, 75 F. Supp. 2d 1374, 1378-79 (N.D. Ga. 1999).

J.     Whether an employer is entitled to rely on the opinion of the employee's doctor concerning the employee's restrictions, even if the employer is mistaken in its interpretation of the doctor's statement.  *See Pesterfield v. Tenn. Valley Auth.*, 941 F.2d 437 (6th Cir. 1991).

K.     Whether termination pursuant to a medical leave policy, when the employee does not return to work within the time required by the policy, is discriminatory.  *See Lewis v. Zilog, Inc.*, 908 F. Supp. 931, 952 (N.D. Ga. 1995).

L.     Whether, viewing the evidence in the light most favorable to Plaintiff, she is entitled to submit her case to the jury, or whether Walgreens is entitled to judgment as a matter of law.

M.     Whether a plaintiff's failure to exercise reasonable diligence in seeking substantially equivalent employment cuts off her damages.  *See Carden v. Westinghouse Elec. Corp.*, 850 F.2d 996, 1005 (3d Cir. 1988).

N.     Whether Plaintiff's injuries/disabilities were temporary or permanent

O.     What was the nature of employer's disability policy and when and if it was communicated to Plaintiff.

P.     Whether instructions by a superior to not perform an essential function of the job render that particular function non-essential.

Q.     What, if any, where the daily life activities substantially impaired by Plaintiff's conditions and to what extend did they impair said activities.

R.     What were the actual essential functions of the position of Management Trainee

12

during Plaintiff's employ

**9.**     **Trial Exhibit Lists.**

A.     Plaintiff's Trial Exhibit List is attached hereto as Schedule A.

B.     Defendant's Trial Exhibit List is attached hereto as Schedule B.

**10.**     **Trial Witness Lists.**

A.     Plaintiff's Witness List is attached hereto as Schedule C.

B.     Defendant's Witness List is attached hereto as Schedule D.

**11.**     **Estimated Trial Time.**

The parties estimate that the trial of this matter will take three to four days.

**12.**     **Estimate of Maximum Attorney's Fees Allowable.**

The ADA provides that a prevailing plaintiff may recover its reasonable attorney's fees and costs.  ADA established caps are not applicable to attorney's fees/costs.

Respectfully submitted this 18th day of January, 2010.

<table>
<tr><td><em>s/ Mayra L. Gonzalez</em></td><td><em>s/ Gaye L. Huxoll</em></td></tr>
<tr><td>Mayra L. Gonzalez (Florida Bar No. 540498)</td><td>Lori A. Brown (Florida Bar No. 846767)</td></tr>
<tr><td>Email: mlgins@yahoo.com</td><td>Email: labrown@littler.com</td></tr>
<tr><td>INTERNATIONAL     IMMIGRATION     &</td><td>Gaye L. Huxoll (Florida Bar No. 149497)</td></tr>
<tr><td>LABOR SERVICES P.A.</td><td>Email: ghuxoll@littler.com</td></tr>
<tr><td>3550 Biscayne Boulevard, Suite 401</td><td>LITTLER MENDELSON, P.C.</td></tr>
<tr><td>Miami, Florida 33137</td><td>One Biscayne Tower, Suite 1500</td></tr>
<tr><td>Telephone: (305) 456-9195</td><td>2 S. Biscayne Boulevard</td></tr>
<tr><td>Facsimile:  (305) 456-9616</td><td>Miami, Florida  33131-1804</td></tr>
<tr><td></td><td>Telephone: (305) 400-7500</td></tr>
<tr><td><em>COUNSEL FOR PLAINTIFF</em></td><td>Facsimile:  (305) 603-2552</td></tr>
<tr><td></td><td><em>COUNSEL FOR DEFENDANT</em></td></tr>
</table>

Firmwide:93416657.3 046685.1038

## SCHEDULE A

## PLAINTIFF'S TRIAL EXHIBITS

| PL No. | DEF. No. | DATE OFFERED | MARKED | ADMITTED | OBJECTIONS[5] | EXHIBIT DESCRIPTION |
|---|---|---|---|---|---|---|
| 1. | | | | | | Charge of Discrimination filed w/ EEOC (PL3) |
| 2. | | | | | | Right to Sue Letter issued by EEOC (PL1) |
| 3. | | | | | | EEOC Investigative File |
| 4. | | | | | | Plaintiff Letter requesting termination letter (PL 718) |
| 5. | | | | | R/H/UP | Agency for Workforce Innovation Unemployment Compensation Fact Finding Statement-3/1/06 |
| 6. | | | | | I/R/H/UP/OB | Entire Unemployment Commission File (PL33-39, PL669-670) |
| 7. | | | | | R | Medical Summary-Dr. Fishel 7/28/03 (PL134-136) |
| 8. | | | | | R | Medical Summary-Dr. Wigoda 8/4/03 (PL139-141) |
| 9. | | | | | R | Medical Summary-Dr. Puente 8/11/03 (PL130-133) |
| 10. | | | | | R | Medical Discharge Instructions-Dr. Galvez 10/31/03 (PL11) |
| 11. | | | | | R/UP | Medical Summary-Dr. Owens 5/15/06 |
| 12. | | | | | | Physician Statement-Dr. Baker 4/15/05 (PL689-691) |
| 13. | | | | | | Physician Statement-Dr. Owens 1/31/06 |
| 14. | | | | | | Physician Statement-Dr. Owens 12/16/05 (PL4-6) |
| 15. | | | | | R/UP | Medical Summary-Dr. Galvez 8/24/06 (PL12) |
| 16. | | | | | R/UP | Medical Summary-Dr. Owens 9/18/06 (PL17) |
| 17. | | | | | | Employee Disability Payments (PL 41-43) |
| 18. | | | | | R | Walgreens Customer Complaint Training Manual (PL 85-98) |
| 19. | | | | | | Management Trainee Performance Review-2003 (PL99-101) |
| 20. | | | | | R | Plaintiff Excel Training Certificate (PL105-06) |
| 21. | | | | | R | Drug Store Management Program |

---

[5] The following codes are used for Defendant's objections: A—Authenticity; I—Contains inadmissible matter; R—Relevancy; H—Hearsay; UP—Unduly prejudicial (probative value outweighed by undue prejudice); P—Privileged; OB—Overly broad; VA—Vague and ambiguous.

| | | | | | | |
|---|---|---|---|---|---|---|
| | | | | | | Announcement (PL102-104) |
| 22. | | | | | R | Plaintiff's Skill Training Certificate (PL107) |
| 23. | | | | | R | Walgreens 10/14/05 letter to Plaintiff (PL 741) |
| 24. | | | | | | Plaintiff's Response to First Interrogatories |
| 25. | | | | | | Plaintiff's Response to Document Request |
| 26. | | | | | | Plaintiff's First Request for Production |
| 27. | | | | | | Plaintiff's First Set of Interrogatories |
| 28. | | | | | | Defendant's Response to First Interrogatories |
| 29. | | | | | | Defendant's Response to First Document Request |
| 30. | | | | | | Defendant's Response to Second Document Request |
| 31. | | | | | | Defendant's Response to Request for Admissions |
| 32. | | | | | H | Deposition of Maria LeCuyer |
| 33. | | | | | H | Deposition of Mario Hernandez |
| 34. | | | | | R/OB | All Medical Documents produced |
| 35. | | | | | R | Mt. Sinai Medical Center medical documents |
| 36. | | | | | VA | Notice of Claimant Disability Status |
| 37. | | | | | VA | Met Life Correspondence |
| 38. | | | | | | Agency for Workforce Innovation documents (PL665668) |
| | | | | | H | All sworn statements, affidavits or depositions (including exhibits attached thereto) given by any party or witness in any proceeding or matter, including this case |
| | | | | | | Any and all exhibits listed on Defendant's Exhibit List, subject to applicable objections |
| | | | | | | Plaintiff reserves the right to add exhibits as they become known to Plaintiff |
| | | | | | | Plaintiff reserves any and all objections to any and all exhibits listed by any other party |
| | | | | | | Plaintiff reserves the right to utilize demonstrative aids including, but not limited to visual aids, videotapes, chars, diagrams and graphs at trial |
| | | | | | | Any and all rebuttal and impeachment exhibits, as needed |

Firmwide:93416657.3 046685.1038

**SCHEDULE B**

**DEFENDANT'S TRIAL EXHIBITS**

**Plaintiff's Objections**

Defendant expects to offer the following exhibits:

1.    Walgreens Job Description for Drug Store Management
      Trainee [DEF 697-699]

2.    Walgreens Personnel Policy – Employment (EEO) [DEF 450]

3.    Walgreens Personnel Policy – Policy Against Harassment
      and Discrimination [DEF 451-452]

4.    8/14/03 letter from Paul Wigoda, M.D. [PL 738]

5.    8/19/03 letter to Plaintiff from Walgreens [PL 111]

6.    8/20/03 letter to Plaintiff from MetLife [PL 790-791]

7.    8/26/03 Plaintiff's Request for Leave [PL 108-109]

8.    9/5/03 Notice re "Disability Benefits Payments" [PL 789]

9.    9/19/03 Notice re "Disability Benefits Payments" [PL 788]

10.   10/16/03 Memo re "Disability Leave" [PL 122]

11.   12/1/03 Memo re "Unpaid Disability Leave Approval" [PL 737]

12.   12/4/03 Certificate to Return to Work or School [PL 699]

13.   12/11/03 letter to Plaintiff from Walgreens Unpaid Leave
      Department [PL 740]

14.   8/5/04 letter to Plaintiff from MetLife [PL 128]

15.   8/9/04 letter to Plaintiff from MetLife [PL 123]

16.   8/12/04 letter to Plaintiff from MetLife [PL 124-125]

17.   8/25/04 Certificate to Return to Work or School [PL 284]

18.   9/8/04 Notice re "Disability Benefits Payments" [PL 787]

19.     3/16/05 letter to Plaintiff from MetLife [PL 735]

20.     3/21/05 letter to Plaintiff from MetLife [PL 736]

21.     4/4/05 letter to Plaintiff from MetLife [PL 119]

22.     5/18/05 letter to Plaintiff from MetLife [PL 126-127]

23.     5/20/05 Notice re "Disability Benefits Payments" [PL 733]

24.     11/9/05 letter to Plaintiff from Walgreens [PL 110]

25.     11/11/05 letter to Plaintiff from MetLife [PL 743]

26.     12/2/05 letter to Plaintiff from MetLife [PL 742]

27.     12/8/05 letter to Plaintiff from MetLife [PL 120]

28.     12/8/05 letter to Plaintiff from MetLife [PL 121]

29.     12/16/05 Supplemental Attending Physician Statement
        [PL 4-6]

30.     1/5/06 Notice re "Disability Benefits Payments" [PL 748]

31.     1/5/06 Notice re "Disability Benefits Payments" [PL 749]

32.     1/20/06 letter to Plaintiff from Walgreens Unpaid Leave
        Department [PL 745]

33.     1/27/06 letter to Plaintiff from MetLife [PL 115-116]

34.     1/31/06 Supplemental Attending Physician Statement
        [PL 7-9]

35.     2/2/06 Fax and Transmission Verification Report [PL 680-681]

36.     2/10/06 handwritten note re "Position at Walgreens MGT"
        [PL 718]

37.     2/10/06 Transmission Result Report [PL 717]

38.     3/8/06 Charge of Discrimination [PL 3]

39.     3/17/06 letter to Plaintiff from MetLife [PL 744]

40.     4/4/06 Direct Deposit [PL 750]

17

41.    4/5/06 Notice to Plaintiff from Walgreens Disability
       Benefits Department [PL 752]

42.    4/5/06 Notice to Plaintiff from Walgreens Disability
       Benefits Department [PL 751]

43.    4/13/06 Direct Deposit [PL 753]

44.    4/14/06 Notice to Plaintiff from Walgreens Disability
       Benefits Department [PL 754]

45.    4/14/06 Notice to Plaintiff from Walgreens Disability
       Benefits Department [PL 755]

46.    5/9/06 AWI Decision of Appeals Referee [PL 670-672]

47.    9/5/06 Walgreens Evidence of Prior Insurance [PL 720]

48.    9/5/06 MediClaim Notice of Rights to Continue Health
       Plan Coverage Under COBRA [PL 15]

49.    10/2/06 AvMed Certificate of Group Health Plan
       Coverage [PL 777]

50.    2/27/07 EEOC Dismissal and Notice of Right to Sue
       [PL 1]

51.    Walgreens training materials: Law and Policies in the
       Workplace [DEF 168-179]

52.    Walgreens training materials: Discrimination
       Prevention [DEF 180-187]

53.    Walgreens training materials: The Laws By Which We
       Manage [DEF 188-195]

54.    Walgreens training materials: Laws, Policies, Ethics and
       Guidelines - Video Learn About It Template [DEF 196-233]

55.    Walgreens training materials: Laws, Policies, Ethics and
       Guidelines – Readings (Management Guidelines) [DEF 234-237]

56.    Walgreens training materials: Laws, Policies, Ethics and
       Guidelines – In-Store Activity [DEF 238-241]

57.    Walgreens ADSM training materials: Laws, Policies, Ethics
       and Guidelines (1/1/06) [DEF 242-274]

Firmwide:93416657.3 046685.1038

58.  Walgreens ADSM training materials: Laws, Policies, Ethics
     and Guidelines (3/1/06) [DEF 275-307]

59.  Walgreens training materials: Managing People Jeopardy!
     [DEF 308-340]

60.  Walgreens ADSM training materials: Laws, Policies, Ethics
     and Guidelines – Pre-ADSM Material (1/1/05) [DEF 341-363]

61.  Walgreens ADSM training materials: Laws, Policies, Ethics
     and Guidelines – In-Class Material (1/1/05) [DEF 364-397]

62.  Walgreens training materials: Managing People: Laws,
     Policies, Ethics and Guidelines (ADSM 2005) [DEF 398-449]

63.  Excerpts from Walgreens Management Employee Relations
     Handbook (1/04) [DEF 453-526]

64.  Walgreens Employee Policy - Disability Benefit Plan (11/18/02)
     [DEF 527-528]

65.  Walgreens Employee Policy – Disability Leave (7/1/03)
     [DEF 529-534]

66.  Walgreens Employee Disability Benefit Plan Summary Plan
     Description (1/03) [DEF 543-559]

67.  Walgreens Employee Disability Benefit Plan Summary Plan
     Description (12/03) [DEF 577-593]

68.  Walgreens Employee Disability Benefit Plan Summary Plan
     Description (12/04) [DEF 611-627]

69.  Walgreens Employee Disability Benefit Plan Summary Plan
     Description (3/06) [DEF 645-661]

Defendant may offer the following exhibits:

70.  2/12/03 e-mail to Maria Lecuyer re "vacation
     schedule" [PL 739]

71.  4/13/05 Disability Claim Supplemental Attending
     Physician Statement [PL 689-691]

72.  5/4/05 Disability Claim Attending Physician
     Statement [PL 687-688]

19

73.    1/18/06 Transmission Verification Report [PL 679]

74.    1/21/06 receipt from Mail Boxes Etc. [PL 682]

75.    2/1/06 Fax cover sheet to Maria Lecuyer [PL 683]

76.    2/20/06 letter to Florida AWI Unemployment Claims
       Center from TALX [PL 36]
       H

77.    3/2/06 AWI Notice of Determination [PL 35]

78.    3/14/06 letter to Florida AWI Office of Appeals from
       TALX [PL 37]

79.    4/7/06 Notice of Unemployment Compensation
       Telephone Hearing [PL 39-40]

80.    6/21/06 Order of Unemployment Appeals Commission
       [PL 678]

81.    6/21/06 Unemployment Appeals Commission Notice of
       Order [PL 677]

82.    9/12/06 Fax and Transmission Verification Report
       [PL 731-732]

83.    Plaintiff's Complaint [Pltf. Dep. Ex. 42]

84.    Defendant's First Set of Interrogatories to Plaintiff
       [Pltf. Dep. Ex. 43]

85.    Plaintiff's Answers to Defendant's First Set of
       Interrogatories [Pltf. Dep. Ex. 44]

86.    Defendant's First Request for Production of Documents
       to Plaintiff [Pltf. Dep. Ex. 45]

87.    Plaintiff's Response to Defendant's First Request for
       Production of Documents [Pltf. Dep. Ex. 46]

88.    Plaintiff's Supplemental Response to Defendant's First Request
       for Production of Documents [Pltf. Dep. Ex. 47]

89.    Defendant's Second Request for Production of Documents
       to Plaintiff [Pltf. Dep. Ex. 48]

Firmwide:93416657.3 046685.1038

90.   Plaintiff's Response to Defendant's Second Request for
      Production of Documents [Pltf. Dep. Ex. 48]

91.   Plaintiff's 2005 tax return [Pltf. Dep. Ex. 1]                                        R

92.   Plaintiff's 2006 tax return [Pltf. Dep. Ex. 2]                                        R

93.   Plaintiff's 2007 tax return [Pltf. Dep. Ex. 3]                                        R

94.   Plaintiff's compensation records [DEF 1-10]

95.   Case Inquiry Report (Case No. 4493) [DEF 11-13]

96.   Case Inquiry Report (Case No. 82839) [DEF 14-16]

97.   Plaintiff's employment application [DEF 23]

98.   Plaintiff's 2003 Performance Review [DEF 20-22]

99.   Plaintiff's 2005 Performance Review [DEF 17-19]

100.  8/31/06 e-mail string re Metlife Request for Mislehiby
      Calvo [DEF 159-160]

101.  Walgreens Job Description for Executive Assistant
      Drug Store Manager (EXA) (5/26/98) [DEF 679-681]                                      R

102.  Walgreens Job Description for Executive Assistant
      Drug Store Manager (EXA) (11/11/02) [DEF 682-684]                                     R

103.  Walgreens Job Description for Executive Assistant
      Drug Store Manager (EXA) (4/16/04) [DEF 685-687]

104.  Documents obtained from Metropolitan Life Insurance
      Company [MET 1-149]                                                                   OB

105.  Documents obtained from Bascom Palmer Eye Institute
      [Bascom 1-388]                                                                        OB, R

106.  Documents obtained from Florida Agency for Workforce
      Innovation [AWI 1-94]

107.  Documents obtained from AvMed Health Plans [AvMed 1-15]

108.  Documents obtained from Doctors Hospital [Doctors 1-299]                              VA, OB

Firmwide:93416657.3 046685.1038

109.  Documents obtained from Equal Employment Opportunity
      Commission [EEOC 1-132]

110.  Documents obtained from Arial Figueredo, M.D. [Figueredo 1-219]                    OB

111.  Documents obtained from Fundora Professional Services
      Corp. [Fundora 1-20]

112.  Documents obtained from Roger Galvez, M.D. [Galvez 1-57]

113.  Documents obtained from Jackson Memorial Hospital
      [JMH 1-131]

114.  Documents obtained from Mercy Hospital [Mercy 1-189]

115.  Documents obtained from Paul Wigoda, M.D. [Wigoda 1-12]

116.  All exhibits listed by Plaintiffs and not objected to
      by Defendant

117.  All rebuttal exhibits

118.  All impeachment exhibits

      Defendant reserves the right to amend its list of exhibits.

Firmwide:93416657.3 046685.1038

**SCHEDULE C**

**<u>PLAINTIFF'S WITNESS LIST</u>**

<u>Plaintiff expects to present the following witnesses:</u>

1.  Mislehiby Calvo
    c/o Int'l. Immigration & Labor Services
    3550 Biscayne Blvd., Suite 401
    Miami, FL 33137

2.  Rafael Veneziano
    c/o Int'l. Immigration & Labor Services
    3550 Biscayne Blvd., Suite 401
    Miami, FL 33137

3.  Dr. Patrick Owens
    900 NW 17th Street, #537
    Miami, FL 33136

4.  Dr. Janet Baker
    900 NW 17th Street, #537
    Miami, FL 33136

5.  Dr. Roger Galvez
    9193 Sunset Drive, Suite 210
    Miami, FL 33173

<u>Plaintiff may present the following witnesses:</u>

6.  Dr. Paul Wigoda
    4650 Dixie Highway
    Ft. Lauderdale, FL 3334

7.  Any and all medical providers

8.  Any and all persons on Defendant's Witness List

9.  Any and all impeachment/rebuttal witnesses

Firmwide:93416657.3 046685.1038

**SCHEDULE D**

**DEFENDANT'S WITNESS LIST**

Defendant expects to present the following witnesses:

1.  Plaintiff Mislehiby Calvo
    c/o Int'l. Immigration & Labor Services
    3550 Biscayne Blvd., Suite 401
    Miami, FL 33137

2.  Mario Hernandez
    c/o Littler Mendelson, P.C.
    2 S. Biscayne Blvd., Suite 1500
    Miami, FL 33131

3.  Maria LeCuyer
    c/o Littler Mendelson, P.C.
    2 S. Biscayne Blvd., Suite 1500
    Miami, FL 33131

4.  Representative of Walgreens Insurance
    and Risk Management Department
    1417 Lake Cook Road
    Deerfield, Illinois 60015

5.  Representative of MetLife Disability
    Lexington, Kentucky 40511

Defendant may present the following witnesses:

6.  Roberto Espinosa
    c/o Littler Mendelson, P.C.
    2 S. Biscayne Blvd., Suite 1500
    Miami, FL 33131

7.  Wilson Guerrero
    c/o Littler Mendelson, P.C.
    2 S. Biscayne Blvd., Suite 1500
    Miami, FL 33131

8.  Michael Nasiff
    c/o Littler Mendelson, P.C.
    2 S. Biscayne Blvd., Suite 1500
    Miami, FL 33131

Firmwide:93416657.3 046685.1038

9.  Rosabel Palacio
    c/o Littler Mendelson, P.C.
    2 S. Biscayne Blvd., Suite 1500
    Miami, FL 33131

10. Jackeline Perez
    c/o Littler Mendelson, P.C.
    2 S. Biscayne Blvd., Suite 1500
    Miami, FL 33131

11. Representative of Equal Employment Opportunity Commission
    2 S. Biscayne Blvd.
    Miami, FL 33131

12. Records Custodian
    Metropolitan Life Insurance Company
    Lexington, Kentucky

13. Records Custodian
    Bascom Palmer Eye Institute

14. Records Custodian
    Florida Agency for Workforce Innovation

15. Records Custodian
    AvMed Health Plans

16. Records Custodian
    Doctors Hospital

17. Records Custodian
    Equal Employment Opportunity Commission

18. Records Custodian
    Arial Figueredo, M.D.

19. Records Custodian
    Fundora Professional Services Corp.

20. Records Custodian
    Roger Galvez, M.D.

21. Records Custodian
    Jackson Memorial Hospital

Firmwide:93416657.3 046685.1038

22. Records Custodian
    Mercy Hospital

23. Records Custodian
    Paul Wigoda, M.D.

24. Witnesses identified by Plaintiff and not objected to by Defendant.

25. Any witnesses required for rebuttal purposes.

Defendant reserves the right to amend its list of witnesses.

Firmwide:93416657.3 046685.1038